| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY, STATE OF COLORADO<br><br>Court Address:<br>100 Jefferson County Parkway<br>Golden, CO 80401 | DATE FILED<br>April 20, 2026 12:41 PM<br>FILING ID: 6BCDC45C34922<br>CASE NUMBER: 2026CV30679 |
| Plaintiff: **VANESSA RUIZ**<br><br>v.<br><br>Defendants: **REDSTONE EDUCATION, L.P. D/B/A MCAIR AVIATION, HARTZELL ENGINE TECHNOLOGIES, LLC, CHAMPION AEROSPACE, LLC, and QUALITY AIRCRAFT ACCESSORIES, INC.** | ▲COURT USE ONLY▲ |
| ***Attorneys for Plaintiff***:<br>Joseph P. LoRusso (#48395)<br>Jessica L. McBryant (#51318)<br>Ezekiel M. Denison (#58290)<br>RAMOS LAW<br>10190 Bannock St., Suite 200<br>Northglenn, CO 80260<br>Phone Number: (303) 733-6353<br>Email: JLoRusso@RamosLaw.com<br>JLMcBryant@RamosLaw.com<br>ZDenison@RamosLaw.com | Case No:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Vanessa Ruiz by and through her attorneys the Ramos Law Firm, submit their Complaint and Jury Demand against Defendant Redstone Education, L.P., d/b/a McAir Aviation, Defendant Hartzell Engine Technologies, and Champion Aerospace, LLC, and Quality Aircraft Accessories, Inc. states and alleges the following:

## INTRODUCTION

1. This matter arises from catastrophic, life-altering injuries sustained by Plaintiff Vanessa Ruiz, age 33, on March 27, 2025, while working as an airplane mechanic on a Cessna 172 aircraft controlled and operated by the Defendant.



EXHIBIT 1

2. The subject aircraft, as further defined herein, had a magneto with impulse coupling defect which was not appropriately communicated to Ms. Ruiz by the Defendants. As a result, when Ms. Ruiz was working near the propeller, the engine spontaneously engaged, causing the propeller to strike the Plaintiff's head.

3. The propeller impact caused a severe traumatic brain injury, severe skull fractures with exposed brain matter, intracranial hemorrhage, seizure activity, cervical spine fracture, facial fractures, respiratory failure, and prolonged complicated hospitalization involving multiple neurosurgical procedures, tracheostomy, PEG placement, and extensive ongoing rehabilitation needs.

4. These injuries, disabilities, and resulting losses were directly and proximately caused by Defendants negligence.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff incorporates all paragraphs above.

6. Plaintiff Vanessa Ruiz is a resident of Colorado and resides at 17050 Pecos St Broomfield, CO 80023.

7. Defendant Redstone Education, L.P. is a Foreign Limited Partnership with its current principal office street address at 403 Skillman Rd, Skillman, NJ 08558 (hereinafter "Defendant Redstone"). Defendant Redstone may be served by and through its Registered Agent, Corporation Services Company located at 1900 W Littleton Blvd, Littleton, CO 80120.

8. On March 6, 2020, Defendant Redstone registered the trade name, McAir Aviation, with the Colorado Secretary of State. At the time of this filing, the trade name is effective.

9. By registering as a limited liability company in the State of Colorado, and by maintaining an effective trade name in the State of Colorado, Defendant Redstone has subjected itself to the personal jurisdiction of this Court and the other Courts in the State of Colorado.

10. Defendant Redstone has substantial contacts with the State of Colorado sufficient to subject itself to the personal jurisdiction of this Court and the other Courts in the State of Colorado.

11. Defendant Hartzell Engine Technologies, LLC (hereinafter "Defendant Hartzell") is a Foreign Limited Liability Company, formed in Delaware and registered with the Alabama Secretary of State. Defendant Hartzell's principal address is 1 Propeller Place, Piqua, OH 45356, and may be served by and through its registered agent, CT Corporation System, located at 2 North Jackson Street, Ste. 605, Montgomery, AL 36104.

12. Defendant Hartzell has substantial contact with the State of Colorado - including but not limited to supporting the subject Aircraft (further described herein) -sufficient to subject itself to the personal jurisdiction of this Court and the other Courts in the State of Colorado.

13. Defendant Champion Aerospace, LLC (hereinafter "Defendant Champion") is a Foreign Limited Liability Company, formed in Delaware and registered with the South Carolina Secretary of State. Defendant Champion's principal address is 1230 Old Norris Road, Liberty, South Carolina 29657, and may be served by and through its registered agent, CT Corporation System, located at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

14. Defendant Champion has substantial contact with the State of Colorado – including but not limited to supporting the subject Aircraft (further described herein) and distributing aircraft parts and accessories throughout the state – sufficient to subject itself to the personal jurisdiction of this Court and the other Courts in the State of Colorado.

15. Defendant Quality Aircraft Accessories, Inc. (hereinafter "Defendant QAA") is a For Profit Business Corporation, registered with the Oklahoma Secretary of State. Defendant QAA's principal address is 5746 E. Apache St., Tulsa, OK 74115, and may be served by and through its registered agent, CT Corporation System, located at 1833 South Morgan Road, Oklahoma City, OK, 73128.

16. Defendant QAA has substantial contact with the State of Colorado – including but not limited to supporting the subject Aircraft (further described herein) and distributing aircraft parts and accessories throughout the state – sufficient to subject itself to the personal jurisdiction of this Court and the other Courts in the State of Colorado.

17. The Court has subject matter jurisdiction over this action pursuant to C.R.S. §13-1-124(1)(A).

18. Pursuant to C.R.C.P. 98(c)(5), venue is proper in Jefferson County District Court because the aircraft crash giving rise to this action occurred in Jefferson County, Colorado.

## FACTUAL ALLEGATIONS

19. Plaintiff incorporates by reference all paragraphs set forth above.

20. All times material hereto, Plaintiff was employed as an aircraft mechanic with Spartan Education Group, LLC.

21. At all times material hereto, the subject "Aircraft," a Cessna 172S with a serial number of 172S10628 and a registration number of N406JA, was operated as a training aircraft by Defendant Redstone by and through its registered tradename McAir Aviation.

22. On or about March 26, 2025, Defendant Hartzell notified Defendant Redstone of a mechanical defect involving a specific batch of Hartzell-manufactured engine magnetos equipped with impulse couplings. Hartzell confirmed it would provide warranty coverage

and address the issue through a forthcoming service bulletin detailing the necessary corrective actions. *see* **EXHIBIT 1: McAir Memo to Spartan Mechanics re Magneto issue.**

23. On February 6, 2019, Defendant Champion issued a Service Bulletin, SB1-19, which required a mandatory inspection of impulse coupled Slick magnetos. *See* **EXHIBIT 2: Champion Aerospace LLC SB1-19**. The Service Bulletin was issued in response to reports in which "impulse coupling stop pins have moved relative to the factory placement within the magneto frame of Slick magnetos." *Id.*

24. On or about February 14, 2020, Defendant Champion issued a Service Bulletin, SB2-19A, which required a mandatory inspection of impulse coupled Slick magnetos. *See* **EXHIBIT 3: Champion Aerospace LLC SB2-19A**. The Service Bulletin was issued in response to reports in which "impulse coupling stop pins have moved relative to the factory placement within the magneto frame of Slick magnetos." *Id.*

25. On or about March 4, 2024, Defendant Hartzel publicly announced its new brand, POWERUP. *See* **EXHIBIT 4: Hartzel Engine Tech Launches POWERUP Article.** The announcement detailed how POWERUP would be comprised of several aircraft parts and components, including, but not limited to Defendant Champion Slick magnetos. *Id.* The Article also claimed despite using, Defendant Champion Slick magneto components, the POWERUP line introduced improvements to the design that "is not subject to Champion Service Bulletin SB2-19A inspections." *Id.*

26. According to the public announcement of POWERUP, Defendant Hartzell's sister company, Defendant QAA, would begin incorporating POWERUP magneto components

into its overhaul process, which would therefore replace the legacy components that were subject to Defendant Champion's Service Bulletin, SB2-19A. *See* Exhibit 4.

27. On March 27, 2025, Defendant Hartzell released an Alert Service Bulletin ("ASB"), enclosed herein as **EXHIBIT 5: Hartzell ASB**, with the goal of "communicat[ing] procedures to inspect for and remove from service certain impulse coupling cam assemblies with undesirable machining features." More specifically, the ASB focused on the impulse Cam Pin, as shown below. Compliance was requested **"Prior to Next Flight**." (emphasis in original). The affected magneto serial number range was H-Y070647 thru H-Z012424.



Figure 1 - Impulse Cam Pin: Missing Material



Figure 2 - Impulse Cam Pin: Chipped

28. On March 27, 2025, acting under the direction of Defendant Redstone, the Plaintiff was instructed to remove the magnetos from two "affected" aircraft in the McAir fleet: N562ND and the subject Aircraft, N406JA. *see* Exhibit 1. Also, according to McAir's memo, the Aircraft was equipped with magneto serial numbers H-Z012442 and H-Z012443, which fell outside the affected range specified in the ASB.

29. While removing the Aircraft's magnetos, and without warning, the engine turned over and started, which caused the propeller to strike the Plaintiff in the head.

30. Immediately after the impact, emergency medical services ("EMS") were called and presented to the scene. According to their records, the EMS crew documented a Glasgow Coma Scale score of 12, exposed brain matter, and severe head trauma.

31. The Plaintiff was initially transported to Good Samaritan Hospital, where initial imagery revealed:

a) Comminuted, displaced skull fracture of the left front temporoparietal bone;

b) Subdural hematoma (10mm thickness);

c) Scattered subarachnoid hemorrhage;

d) C1 nondisplaced cervical fracture;

e) Left ICA supraclinoid vascular irregularity, consistent with vascular injury;

f) Left zygomatic fracture.

32. In response to the diagnostic imaging, the Good Samaritan Hospital trauma team proceeded with a right twist-drill procedure to install an ICP monitor. Additionally, a left front temporoparietal craniotomy was also performed so that the Plaintiff could be transferred to the Lutheran Medical Center for high-level neurosurgical care.

33. Immediately prior to the scheduled inter-facility transfer, the Plaintiff suffered a grand mal seizure. This acute neurological event necessitated emergent endotracheal intubation for airway protection.

34. In the weeks following the injury, during the Plaintiff's hospitalization at Lutheran Medical Center, the clinical course was marked by several significant medical events, including but not limited to:

a) Acute respiratory failure requiring prolonged mechanical ventilation;

b) MRSA and positive cultures for staph epidermis;

c) Tracheostomy placement;

d) Tracheostomy dislodgement, replacement;

e) PEG tube insertion due to severe dysphagia;

f) Persistent and severe cognitive, physical, and neurological deficits.

35. On April 24, 2025, the Plaintiff was transferred to Craig Hospital for continued on going multi-organ system and medical management. The Plaintiff remains under the care of Craig Hospital at the time of this filing.

**COUNT I: NEGLIGENCE**
**(*Defendant Redstone*)**

36. Plaintiff incorporates by reference all paragraphs set forth above.

37. Upon information and belief, as the operator of the aircraft, Defendant Redstone engaged in direct communication with Defendant Hartzell regarding the scope of work, including, but not limited to, the immediate and significant risks associated with the same. Consequently, Defendant Redstone owed the Plaintiff a duty of care to implement all reasonable and necessary safety precautions to secure the Aircraft and its surroundings prior to requesting such maintenance services.

38. Similarly, upon information and belief and based on Defendant Redstone's communications with Defendant Hartzell, Defendant Redstone had a duty to adequately inform Plaintiff of the significant risks and hazards associated with the Aircraft and its mechanical needs.

39. The spontaneous engine engagement and subsequent propeller strike—which caused the Plaintiff's catastrophic injuries and damages—were the direct and proximate result of Defendant Redstone's negligence and fault. This negligence includes, but is not limited to, the following acts and omissions:

a) Negligent failure to properly inform the Plaintiff of the significant and life-threatening risks associated with the requested maintenance;

b) Negligent failure to properly secure the Aircraft and the surrounding area so that no one could inadvertently come into contact with the Aircraft or its propeller;

c) Despite the known and significant risks associated with the requested maintenance, Defendant Redstone negligently failed to ensure that essential life-saving and emergency equipment was staged within the immediate vicinity of the work area;

d) Such other and further acts and omissions constituting negligence as may be revealed in discovery and trial.

40. No act or omission on the part of the Plaintiff caused or contributed to cause the March 27, 2025 propeller strike.

41. As a direct and proximate result of the negligence of Defendant Redstone, Plaintiff has suffered, and will suffer, injuries, including without limitation, economic and noneconomic damages: including loss of enjoyment and quality of life, permanent physical impairment and disfigurement, pain and suffering, mental anguish, and emotional distress.

**COUNT II: NEGLIGENCE & VICARIOUS LIABILITY**
**(*Defendant Redstone*)**

42. Plaintiff incorporates by reference all paragraphs set forth above.

43. Upon information and belief, Defendant Redstone's employees, agents, staff, and/or representatives consulted with, and discussed, the necessity to replace the magnetos with impulse couplings in N562ND and the subject Aircraft.

44. Upon information and belief, Defendant Redstone's employees, agents, staff, and/or representatives coordinated, instructed, and organized the maintenance to be performed by the Plaintiff.

45. At all relevant times, Defendant Redstone's employees, agents, staff, and/or representatives were acting within the course and scope of their employment with Defendant Redstone.

46. In consideration of the correspondence between a Defendant Redstone employee, agent, staff, and/or representative and Defendant Hartzell, Defendant Redstone's employees, agents, staff, and/or representatives were directly responsible for the safety of the mechanics and owed a duty to the same including, but not limited to, the Plaintiff.

47. In consideration of the correspondence between a Defendant Redstone employee, agent, staff, and/or representative and Defendant Hartzell, Defendant Redstone's employees, agents, staff, and/or representatives were responsible for vigilance in ensuring the Aircraft was secured and safe prior to requesting maintenance.

48. Defendant Redstone's employees, agents, staff, and/or representatives deviated from acceptable standards of care in discharging their responsibilities, and those deviations constitute negligence and fault.

49. Defendant Redstone's employees, agents, staff, and/or representatives' negligence and deviation from the acceptable standard of care include but are not limited to the following:

a) Negligent failure to properly inform the Plaintiff of the significant and life-threatening risks associated with the requested maintenance;

b) Negligent failure to properly secure the Aircraft and the surrounding area so that no one could inadvertently come into contact with the Aircraft or its propeller;

c) Despite the known and significant risks associated with the requested maintenance, Defendant Redstone negligently failed to ensure that essential life-saving and emergency equipment was staged within the immediate vicinity of the work area;

d) Such other and further acts and omissions constituting negligence as may be revealed in discovery and trial.

50. Defendant Redstone's employees, agents, staff, and/or representatives negligence was a direct and proximate cause of the Plaintiff's injuries and harms.

51. Defendant Redstone is vicariously liable for the negligence and deviations from the acceptable standard of care by Defendant Redstone's employees, agents, staff, and/or representatives.

52. As a direct and proximate result of the negligence of Defendant Redstone, Plaintiff has suffered, and will suffer, injuries, including without limitation, economic and noneconomic damages: including loss of enjoyment and quality of life, permanent physical impairment and disfigurement, pain and suffering, mental anguish, and emotional distress.

**COUNT III: STRICT PRODUCTS LIABILITY**
**(*Defendant Hartzell*)**

53. Plaintiff incorporates by reference all paragraphs set forth above.

54. Plaintiff belongs to the class of persons whom Defendant Hartzell should have reasonably foreseen would be harmed by the defectively designed magneto and impulse coupling assembly. As an individual tasked with repairing the component in the field, Plaintiff is a foreseeable user acting within the scope of the product's intended maintenance and service

55. Defendant Hartzell, by and through its brand POWERUP, is engaged in the business of manufacturing, assembling, producing, marketing, supporting, type certificating, authorizing, and designing the subject magneto and impulse coupling assembly, and this Defendant placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the products.

56. Defendant Hartzell, through its marketing of the POWERUP brand, represented to the aviation community and to Defendant Redstone that the new magneto line featured improved designs that were not subject to the failure modes identified in Champion Service Bulletins SB1-19 and SB2-19A. This representation was false and misleading, as the issuance of ASB 225 on the very day of the incident proves the POWERUP line contained the same, or substantially similar, catastrophic machining defects, thereby lulling the maintenance community into a false sense of security regarding the stability of the ignition system during service.

57. The magneto and impulse coupling assembly were defective in design and formulation and were unreasonably dangerous when it left the hands of Defendants Hartzell, the manufacturers, assemblers, producers, marketers, designers, and supporters, and it reached the Plaintiff without substantial alteration from the condition in which it was sold.

58. The magneto and impulse coupling assembly manufactured, assembled, produced, marketed, designed, and supported, by Defendant Hartzell were unreasonably and dangerously defective beyond the extent contemplated by ordinary aircraft mechanics with ordinary knowledge regarding these products.

59. The design and/or manufacturing defects that existed in the magneto and impulse coupling assembly were defective in design in the following particulars:

a) Defectively designed and/or manufactured magneto and impulse coupling assembly;

b) Defects in the magneto and impulse coupling design and manufacturing create a hazardous condition wherein the engine may cycle involuntarily, posing a direct risk of un-commanded propeller engagement; and

c) Defectively designed magneto and impulse coupling that induces un-commanded engine cycle and propeller engagement without the appropriate safety features to prevent such occurrences.

60. Defendant Hartzell failed to adequately study and/or test the magneto and impulse coupling, in addition to its failure to adequately report the results of any studies and/or tests that may have been performed.

61. Defendant Hartzell knew or should have known of the risk of injury from the faulty magneto and impulse coupling, yet they failed to provide adequate warning to the maintenance community.

62. Defendant Hartzell is responsible for formulating and distributing appropriate and detailed Service Bulletins which adequately detail the significant life-threatening risks and dangers

associated with the inspection and removal of the defective magnetos and impulse coupling.

63. The product defects alleged above were a substantial contributing cause of the Plaintiffs injuries and harms.

64. As a direct and proximate result of the negligence of Defendant Hartzell, Plaintiff has suffered, and will suffer, injuries, including without limitation, economic and noneconomic damages: including loss of enjoyment and quality of life, permanent physical impairment and disfigurement, pain and suffering, mental anguish, and emotional distress.

**COUNT IV: STRICT PRODUCTS LIABILITY: FAILURE TO WARN**
**(*Defendant Hartzell*)**

65. Plaintiff incorporate by reference all paragraphs set forth above.

66. Defendant Hartzell manufactured, assembled, produced, marketed, supported, and designed the magneto and impulse coupling, and placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the products.

67. Defendants Hartzell, assembled, produced, marketed, supported, and designed magneto and impulse coupling, were defective due to inadequate warning, studying, and/or testing, and inadequate reporting regarding the results of such studies and/or tests.

68. The magneto and impulse coupling were defective due to inadequate warning by and through the maintenance manual, Hatzell's Alert Service Bulletin No. 225, and other publications, including the absence of the same. The Alert Service Bulletin failed to provide any warning regarding un-commanded engine and propeller engagement and, instead, simply and generally stated that the maintenance included a risk of "ECONOMIC LOSS, EQUIPMENT DAMAGE, AND/OR PHYSICAL INJURY" (emphasis in original).

The warning provided by the Alert Service Bulletin does not properly notify mechanics that the inspection and procedure carry a significant risk of injury and death due to a possibility of un-commanded engagement of both the engine and the propeller systems. Defendant Hartzell knew or should have known of the risk of injury from the faulty magneto and impulse coupling, yet they failed to provide adequate warning to the aviation maintenance community, and continued to promote the procedure as, as being safe and effective, and customary.

69. The fact that the subject Aircraft (N406JA) was equipped with magnetos (S/N H-Z012442 and H-Z012443) falling outside the affected range specified in ASB 225, yet still experienced an un-commanded engagement, demonstrates that the manufacturing defect was more pervasive than Defendants disclosed. This under-inclusive affected range constitutes a separate and distinct failure to warn, as it led Plaintiff and Defendant Redstone to believe the subject Aircraft's magnetos were merely being replaced as a precaution rather than possessing a present, lethal instability.

70. The defective warnings, and the failure to provide warnings of any kind, pertaining to un-commanded engine and propeller engagement, were substantial factors in bringing about the injuries to the Plaintiffs.

71. Defendant Hartzell is responsible for formulating and distributing appropriate maintenance instructions, inclusive of adequate warnings and instructions for preventing and mitigating the significant dangers associated with the maintenance instructions, to ensure the safety of the aircraft mechanics.

72. As the direct and proximate result of the magneto and impulse coupling, that was manufactured, assembled, produced, and marketed by Defendant Hartzell, and specifically

its failure to warn, and their negligence, carelessness, and other wrongdoings and actions described herein, Plaintiff has suffered, and will suffer, injuries, including without limitation, economic and noneconomic damages: including loss of enjoyment and quality of life, permanent physical impairment and disfigurement, pain and suffering, mental anguish, and emotional distress.

**COUNT IV: NEGLIGENCE**
**(*Defendants QAA and Champion*)**

73. Plaintiff incorporates by reference all paragraphs set forth above.

74. Defendant Champion is an FAA certified repair station.

75. Defendant QAA is an FAA certified repair station.

76. Upon information and belief, Defendant QAA and Defendant Champion were aware of the life threatening manufacturing defects in the subject magneto with impulse coupling, which had existed since at least 2019 with Defendant Champion, and continued through 2025 with Defendant Hartzell and POWERUP. Consequently, Defendants QAA and Champion owed the Plaintiff a duty of care to overhaul, assemble, and repair the subject magnetos with impulse coupling so as to mitigate the life threatening dangers associated with the same.

77. As Defendant QAA and Defendant Champion were aware of the life threatening manufacturing defects in the subject magneto with impulse coupling, which had existed since at least 2019 with Defendant Champion, and continued through 2025 with Defendant Hartzell and POWERUP, these defendants had a duty to adequately inform Plaintiff of the significant risks and hazards associated with the subject magneto and impulse coupling and its mechanical needs.

78. The spontaneous engine engagement and subsequent propeller strike—which caused the Plaintiff's catastrophic injuries and damages—were the direct and proximate result of Defendant QAA and Defendant Champion's negligence. This negligence includes, but is not limited to, the following acts and omissions:

a) Negligent failure to properly overhaul the subject magnetos with impulse coupling.

b) Negligent failure to properly assemble the subject magnetos with impulse coupling.

c) Negligent failure to properly repair the subject magnetos with impulse coupling.

d) Negligent failure to warn the Plaintiff of the significant life threating risks while performing required maintenance inspections and functions of the subject magneto with impulse coupling.

e) Negligently placing the subject magnetos with impulse coupling into the stream of commerce with components that had known mechanical and design defects, which had been known since at least 2019 with Defendant Champion, and have continued to be an issue since at least 2025 with Defendant Hartzell.

f) Such other and further acts and omissions constituting negligence as may be revealed in discovery and trial.

79. Additionally, Defendants QAA and Champion were negligent by failing to exercise reasonable care in their policies and procedures and/or by failing to make sure the subject magnetos with impulse coupling were free of defect in accordance with industry standards, and/or by failing to warn and in failing to do so created an unreasonable risk of harm to persons who were reasonably expected to maintain the same.

80. Defendants QAA and Champion overhauled, assembled, repaired, produced, marketed, designed, and supported the subject magnetos with impulse coupling which caused or contributed to the injuries suffered and sustained by the Plaintiff.

81. Defendants QAA and Champion were responsible for making sure the subject magnetos with impulse coupling were free from defects.

82. After leaving the possession of Defendants QAA and/or Champion, upon information and belief, the magnetos with impulse coupling were not tampered with or otherwise altered beyond routine maintenance and care.

83. The un-commanded engagement of the Aircraft's engine and propeller, as described herein, would not normally occur in the absence of negligence.

84. No act or omission on the part of the Plaintiff caused or contributed to cause the March 27, 2025 propeller strike.

85. As a direct and proximate result of the negligence of Defendant Redstone, Plaintiff has suffered, and will suffer, injuries, including without limitation, economic and noneconomic damages: including loss of enjoyment and quality of life, permanent physical impairment and disfigurement, pain and suffering, mental anguish, and emotional distress.

**DAMAGES & REQUEST FOR TRIAL BY JURY**

86. Plaintiff incorporates by reference all paragraphs set forth above.

87. No act, omission, or commission on the part of Plaintiff caused or contributed to the Incident or any of the damages or harms being alleged and claimed by Plaintiff herein.

88. As a direct and proximate result of the negligent acts and omissions of the Defendants which caused or contributed to the injuries suffered by the Incident, Plaintiff has been made to sustain and suffer damages which include but are not limited to: past medical care and

treatment and expenses incurred for said care and treatment; additional medical care and treatment in the future and expenses to be incurred for said care; past and future pain, suffering, and mental anguish; permanent impairment and disfigurement; loss of earnings; and others damages as permitted under Colorado law.

89. Plaintiff Vanessa Ruiz demands trial by jury for all claims.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in their favor and against Defendant in an amount which will fully compensate them for all damages she sustained to the full extent allowed by law, including, without limitation, economic, non-economic, and permanent impairment and disfigurement damages as provided for under Colorado Law as well as interest, costs, and such other relief as the Court deems just and appropriate.

Dated this 20th day of April, 2026

RAMOS LAW
*This pleading is filed electronically pursuant to C.R.C.P. 121 § 1-26. The original signed pleading is in counsel's file.*

By:*/s/ Joseph P. LoRusso*

Joseph P. LoRusso (#48395)
Jessica L. McBryant (#51318)
Ezekiel M. Denison (#58290)
RAMOS LAW
10190 Bannock Street Suite #200
Northglenn, CO 80260
JLoRusso@ramoslaw.com
JLMcBryant@RamosLaw.com
ZDenison@RamosLaw.com
*Attorneys for Plaintiff*

Plaintiff's Address
c/o Ramos Law